1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

DEON COLE,

Plaintiff,

v.

AMAZON.COM SERVICES LLC, et al.,

Defendants.

CASE NO. 2:24-cv-01147-TL

ORDER ON MOTION TO DISMISS

17     This is a case stemming from an incident where a delivery driver allegedly took

18 unauthorized photographs of a customer's home while delivering groceries to the customer. This

19 matter comes before the Court on Defendants' motion to dismiss. Dkt. No. 37. Having reviewed

20 the motion, Plaintiff's response (Dkt. No. 40), Defendants' reply (Dkt. No. 43), and the relevant

21 record, the Court GRANTS Defendants' motion with leave to amend.

22                          I.    BACKGROUND

23     Plaintiff is Deon Cole, an actor and comedian who describes himself as a "well-known

24 celebrity." Dkt. No. 32 (Amended Complaint) ¶ 4.16. Defendants are Amazon.com Services

1    LLC ("Amazon") and Amazonfresh LLC ("Fresh"), as well as 20 unnamed John Does. *Id.*

2    ¶¶ 2.2–2.4.

3          On April 20, 2022, Plaintiff placed an order for grocery delivery from Defendant Fresh.

4    *Id.* ¶ 4.1. Later that day, a driver—an employee of Defendant Fresh—arrived at Plaintiff's

5    residence to deliver the groceries. *Id.* ¶¶ 4.2–4.3. When Plaintiff answered the door, the driver

6    advised Plaintiff that he needed to see Plaintiff's identification to complete the delivery. *Id.* ¶ 4.3.

7    Plaintiff went to retrieve his driver's license but left the door to his house "partially open." *Id.*

8    ¶ 4.4. When Plaintiff returned with his license, he found the driver "taking unauthorized photos

9    of the inside of his home from the doorstep." *Id.* ¶ 4.5. Plaintiff asked the driver to stop taking

10   pictures and began to record the driver's actions with his phone. *Id.* ¶¶ 4.6–4.7. The two then

11   "exchanged several words," with the driver initially denying that he had taken any photographs.

12   *Id.* ¶¶ 4.8–4.9. After Plaintiff advised that he had seen a photo on the screen of the driver's

13   electronic device, the driver agreed to delete the photos from the device. *Id.* ¶¶ 4.8–4.9. After the

14   driver left, Plaintiff reviewed the video recording of the incident that he had made on his phone.

15   *Id.* ¶ 4.11. "The recording showed the delivery person's phone screen and a group chat in which

16   photos of [Plaintiff's] house were shared." *Id.* Plaintiff contacted Defendant Amazon to complain

17   but was dissatisfied with the company's response. *Id.* ¶¶ 4.13–4.14.

18         The incident left Plaintiff "troubled and in constant distress over his safety while in the

19   privacy of his home." *Id.* ¶ 4.15. Plaintiff engaged in "multiple therapy sessions" and installed a

20   new home security system for his residence. *Id.* ¶¶ 4.15, 4.18. Finally, some 18 months

21   afterward, on October 28, 2023, there was an attempted burglary on Plaintiff's home, which the

22   new security system thwarted. *Id.* ¶ 4.19.

23         On March 28, 2024, Plaintiff filed a California state-law complaint against Defendants in

24   Los Angeles County Superior Court, alleging negligence, intentional infliction of emotional

ORDER ON MOTION TO DISMISS - 2

1    distress, and breach of contract. Dkt. No. 1-1. Defendants removed the case to United States

2    District Court for the Central District of California (Dkt. No. 1), then moved to transfer the case

3    to the Western District of Washington pursuant to 28 U.S.C. § 1404(a) and a forum-selection

4    clause in the Amazon.com Conditions of Use (Dkt. No. 8). Plaintiff opposed the motion, but on

5    July 26, 2024, U.S. District Judge André Birotte Jr. granted Defendants' motion. Dkt. No. 21.

6         On September 26, 2024, Plaintiff filed an Amended Complaint in this Court. Dkt. No. 32.

7    Now brought under Washington law, the Amended Complaint—now the operative complaint in

8    this matter—alleges negligence, outrage, invasion of privacy, and breach of contract. *Id.* ¶¶ 5.1–

9    8.7. On November 1, 2024, Defendants filed the instant motion to dismiss. Dkt. No. 37. Plaintiff

10   opposes (Dkt. No. 40), and Defendants filed a reply (Dkt. No. 43).

## II.    LEGAL STANDARD

12        A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

13   can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the

14   Court takes all well-pleaded factual allegations as true and considers whether the complaint

15   "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

16   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

17   recitals of the elements of a cause of action, supported by mere conclusory statements," are

18   insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

19   that allows the court to draw the reasonable inference that the defendant is liable for the

20   misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule

21   12(b)(6), "'we accept as true all facts alleged in the complaint and construe them in the

22   light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United*

23   *States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs.*

24   *Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

1

### III.    DISCUSSION

2    As stated above, the Amended Complaint includes four causes of action, all brought

3 under Washington state law: negligence, outrage, invasion of privacy, and breach of contract.

4 Dkt. No. 32 ¶¶ 5.1–8.7. The Court examines each in turn.

5 **A.    First Cause of Action: Negligence**

6    Defendants observe that Plaintiff "groups four different negligence claims into one

7 general negligence claim." Dkt. No. 37 at 8; *see* Dkt. No. 32 ¶ 5.5. The Court agrees with this

8 description and construes the "group[ed]" negligence claim as comprising separate claims for

9 negligent hiring, negligent training, negligent supervision, and negligent retention.

10    **1.    Hiring, Training, and Supervision**

11    As to negligent hiring, training, and supervision, Defendants point out that these claims

12 necessarily fail as a matter of law, because "Plaintiff fails to allege that the driver acted <u>outside</u>

13 the scope of his employment." Dkt. No. 37 at 9 (underscore in original). The Court agrees. In

14 Washington, "negligent hiring, training, and supervision claims against an employer require that

15 the employee 'acted outside the scope of his or her employment.'" *Lidstrom v. Scotlynn*

16 *Commodities Inc.*, No. C23-1544, 2024 WL 2886570, at *2 (E.D. Wash. June 6, 2024) (quoting

17 *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479, 271 P.3d 254 (2011)).

18    In his Amended Complaint, Plaintiff alleges that, "At all relevant times herein the driver,

19 *while in the scope of his employment for Amazon and Fresh*, intended to invade the privacy of

20 [Plaintiff's] home and/or obtain unauthorized photographs of the inside of [Plaintiff's]

21 residence." Dkt. No. 32 ¶ 5.4 (emphasis added). Plaintiff argues in his response that the Court

22 should discount the language of the pleading, as it is merely "a play on words" (Dkt. No. 40 at

23 5)—but the Court fails to see the game and instead takes the allegations at face value. They are

24 straightforward, pleaded in plain and declarative language, and crafted by legal counsel. Simply

1    put, the complained-of conduct allegedly occurred within the scope of the driver's employment

2    with Defendants.

3        In his response to Defendants' motion, Plaintiff argues that "some of [the driver's]

4    actions, ie [*sic*] the taking of photographs, were outside the scope of his employment." *Id.* But

5    this does not salvage the claim. "It is axiomatic that [a] complaint may not be amended by the

6    briefs in opposition to a motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009

7    (N.D. Cal. 2014) (first citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th

8    Cir. 1984); then citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). As

9    pleaded, then, the claims for negligent hiring, training, and supervision fail as a matter of law.

10       **2.    Retention**

11       Defendants argue that Plaintiff's negligent retention claim fails because "Plaintiff does

12    not plead Amazon had knowledge of the alleged unfitness of the driver." Dkt. No. 37 at 10.

13    "Negligent retention consists of retaining the employee without knowledge of his unfitness, or of

14    failing to use reasonable care to discover it before retaining him." *Anderson v. Soap Lake Sch.*

15    *Dist.*, 191 Wn.2d 343, 358, 423 P.3d 197 (2018) (cleaned up) (internal quotation marks and

16    citations omitted). In pleading a claim of negligent retention, a plaintiff must allege "facts or

17    events [that] should have alerted Defendants of [their employee's] apparent unfitness, or what

18    efforts Defendants should have undertaken to uncover the [employee's] alleged unfitness."

19    *Hudnall ex rel. J.H. v. City of Pasco*, No. C23-5168, 2024 WL 1471542, at *5 (E.D. Wash. Apr.

20    4, 2024).

21       In his Amended Complaint, Plaintiff provides some bare factual allegations that might

22    suggest negligent *hiring* (a claim which, as discussed above, fails for another reason), but not

23    negligent retention. "On information and belief," Plaintiff asserts, "Defendants failed to conduct

24    any criminal background check or any reference check in making the determination to hire the

1    driver involved with [Plaintiff's] delivery." Dkt. No. 32 ¶ 4.21. But "[n]egligent hiring occurs at

2    the time of hiring, while negligent retention occurs in the course of employment." *Evans v.*

3    *Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 46–47, 380 P.3d 553 (2016) (citing *Peck v. Siau*, 65

4    Wn. App. 285, 288, 827 P.2d 1108 (1992)). Here, Plaintiff does not allege facts regarding

5    anything that occurred *during the driver's employment*, prior to the incident, that should have

6    alerted Defendants to his unfitness to remain their employee. Plaintiff also does not allege any

7    facts regarding efforts Defendants should have taken to uncover the driver's alleged unfitness

8    before the incident. (Plaintiff, for that matter, does not appear to know who the driver is.) Based

9    on the facts alleged in the Amended Complaint, the Court can find no reason that Defendants

10    might have suspected that the driver was a substandard employee, and Plaintiff does not describe

11    any efforts that Defendants might have taken to determine as much. As pleaded, the claim for

12    negligent retention fails as a matter of law.

13        Therefore, as to Plaintiff's first cause of action, the Court GRANTS Defendants' motion

14    and DISMISSES the claim for negligence.

15    **B.    Second Cause of Action: Outrage**

16        "To state a claim for the tort of outrage a plaintiff must show: (1) extreme and outrageous

17    conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the

18    plaintiff of severe emotional distress." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233,

19    242, 35 P.3d 1158 (2001). "The question of whether certain conduct is sufficiently outrageous is

20    ordinarily for the jury." *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989). On a

21    motion to dismiss, "it is initially for the court to determine if reasonable minds could differ on

22    whether the conduct was sufficiently extreme to result in liability." *Id.* (citing *Phillips v.*

23    *Hardwick*, 29 Wn. App. 382, 387, 628 P.2d 506 (1981)).

24

1    Defendants argue that "[t]he alleged unauthorized photograph[y] of the entry of

2  Plaintiff's home does not rise to the level of extreme conduct required to support an outrage

3  claim." Dkt. No. 37 at 12. Plaintiff, naturally, disagrees. *See* Dkt. No. 40 at 5. But neither Party

4  provides apposite caselaw against which the Court might compare the complained-of conduct.

5  Defendants cite a case where a plaintiff agonizingly watched his wife die "in front of his eyes"; a

6  case where a plaintiff was harassed "for months" by a neighbor who incessantly set off a truck

7  alarm; and a case where a defendant "yell[ed] at a young family in parking lot, call[ed] police,

8  and falsely accus[ed] family of trespass." Dkt. No. 37 at 12. All of these miss the mark: The

9  complained-of conduct in this case—namely, the unauthorized photography of a private

10  residence—is something substantially different from the complained-of conduct in these

11  purported comparator cases. For his part, Plaintiff makes only conclusory statements—that, for

12  example, "[a]ny reasonable person in Plaintiff's position would find [the alleged misconduct]

13  highly offensive and intolerable"—in support of his position. Dkt. No. 40 at 5. While this may be

14  true, the Court will not credit such presumption as legally persuasive argument. Moreover, the

15  Court notes that "highly offensive and intolerable" is not "outrageous" under Washington law,

16  where, since its introduction in 1975, the tort of outrage has been reserved for conduct that is

17  "extreme," "atrocious," "beyond all possible bounds of decency," and "utterly intolerable in a

18  civilized community." *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975); *see id.* at 61

19  (Wright, J., dissenting).

20    The Court located one point of reference in Washington caselaw with respect to a claim

21  of outrage under circumstances that might be considered a "photographic invasion of privacy."

22  In *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998), the Washington Supreme Court

23  considered an allegation that "County employees appropriated and displayed photographs of the

24  corpses of [plaintiffs'] deceased relatives." *Id.* at 203. "[F]or a period of at least 10 years

ORDER ON MOTION TO DISMISS - 7

employees of the Pierce County Medical Examiner's office appropriated autopsy photographs of corpses, showing them at cocktail parties and using them to create personal scrapbooks." *Id.* at 198. Such behavior, the court found, was outrageous. *Id.* at 204.[1] But this exceptional fact pattern provides little guidance to the Court here; the nature of the unauthorized photography, along with its 10 years of misuse, make that case factually incomparable. *Reid* does, however, establish the broader proposition that dubiously obtaining and/or displaying photographs might be, in certain circumstances, outrageous.

Absent any analogous fact patterns to which the Court can compare the complained-of conduct in this case, the Court turns to the adjectives and other descriptors cited above—that is, "extreme," "atrocious," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." *Grimsby*, 85 Wn.2d at 59. Extreme, atrocious, and utterly intolerable means more egregious than merely "tortious" or "criminal"; that is, actionability does not translate into outrageousness. *See Lewis v. Bell*, 45 Wn. App. 192, 195, 724 P.2d 425 (1986). Rather, "[o]utrageous conduct is conduct which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Reid*, 136 Wn.2d at 201–02. "This is a high bar, and the Washington courts are not easily outraged." *Jermy v. Jones*, No. 99-35044, 2000 WL 35044, at *2 (9th Cir. Nov. 9, 2000).

Two cases are illustrative of the hurdle that Plaintiff's pleading must clear. In *M.M.T. v. United States*, 337 F. Supp. 3d 1099 (W.D. Wash. 2018), the plaintiff alleged that an on-the-job United States Postal Service employee entered her home without permission, then refused to depart despite plaintiff's "yelling at him to leave." *Id.* at 1101–02. The plaintiff feared for her

---

[1] The Court notes that the Washington Supreme Court still upheld the trial court's ultimate dismissal of the outrage claim on the grounds that the plaintiffs in that case "were not present when the conduct occurred," and could therefore "not maintain tort of outrage actions." *Reid*, 136 Wn.2d at 203.

1   safety such that she "thought she [might] have to defend herself" with a knife. *Id.* at 1102.

2   Despite this alleged misconduct, the court found that the plaintiff "ha[d] failed to allege either

3   extreme or outrageous conduct or severe emotional distress," calling it a "close question whether

4   [p]laintiff's allegations state[d] a claim for relief." *Id.* at 1106. The court dismissed the claim

5   without prejudice and granted the plaintiff leave to amend the claim. *Id.* at 1107. In *Womack v.*

6   *Von Rardon*, 133 Wn. App. 254, 135 P.3d 542 (2006), the Washington Court of Appeals

7   affirmed dismissal of an outrage claim where defendants had taken plaintiff's cat from her "front

8   porch and[,] using gasoline[,] set him on fire. [The cat] suffered first, second, and third degree

9   burns [and] was soon euthanized." *Id.* at 257. This claim was deficient because it lacked a

10  showing of defendants' intent to inflict severe emotional distress. *Id.* at 261.

11          Here, Plaintiff alleges in the Amended Complaint nothing more than the "photograph[y]

12  [of] the inside of Plaintiff's residence." Dkt. No. 32 ¶ 6.2. Plaintiff alludes to various

13  circumstances that made such photography offensive—*e.g.*, that it was done without Plaintiff's

14  consent, that Plaintiff is a celebrity—but these do not truly demonstrate what was legally

15  *outrageous* about the complained-of conduct itself. *See id.* ¶¶ 6.2, 6.4. Similarly, Plaintiff

16  provides assertions that the photography was done "intentionally and purposefully" (*id.* ¶ 6.2),

17  "for the purpose of financial gain" (*id.* ¶ 5.4)—but not that it was done with an eye toward

18  injuring Plaintiff. Finally, while the Amended Complaint certainly pleads *some* emotional

19  distress, it does not sufficiently plead the *severe* emotional distress that is required for a claim of

20  outrage. *See id.* ¶ 6.6. Consequently, Plaintiff does not plead sufficient facts to support the

21  elements of an outrage claim, and the Court must dismiss it.

22          The Court recognizes that information or evidence regarding Defendants' intent and/or

23  awareness of what their employee was doing is exclusively within the possession or control of

24  Defendants themselves, and not Plaintiff. Still, such elements can be adequately *pleaded* prior to

1  discovery, where a plaintiff need only provide "factual information that makes the inference of

2  culpability possible." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 891 n.3 (C.D. Cal. 2024)

3  (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). And Plaintiff is in

4  possession of additional factual information regarding the first and third elements of a claim for

5  outrage.

6      The Court thus finds that reasonable minds could *not* differ as to whether the alleged

7  misconduct was "sufficiently extreme to result in liability." *Dicomes*, 113 Wn.2d at 630. As

8  presented in the Amended Complaint, merely snapping photographs of an individual's home—

9  even its interior—without permission is simply not, as pleaded, beyond all possible bounds of

10 decency. And while it may be unwelcome, upsetting, and offensive, *see infra* Section III.C—

11 perhaps, even, very much so—it is not utterly intolerable in our community.

12     Therefore, as to Plaintiff's second cause of action, the Court GRANTS Defendants' motion

13 and DISMISSES the claim for outrage.

14 **C.    Third Cause of Action: Invasion of Privacy**

15     In Washington, courts follow the "general rule for invasion of privacy," as provided in

16 Section 652D of the Restatement (Second) of Torts:

17          One who gives publicity to a matter concerning the private life of
            another is subject to liability to the other for invasion of privacy, if
18          the matter publicized is of a kind that: (a) would be highly
            offensive to a reasonable person, and (b) is not of legitimate
19          concern to the public.

20 *Reid,* 136 Wn.2d at 205. (quoting Restatement (Second) of Torts § 652D (1977)). Defendants

21 assert that Plaintiff's claim fails for two reasons: First, Defendants argue that under Washington

22 law, the complained-of conduct was not highly offensive to a reasonable person. Dkt. No. 37 at

23 13. Second, Defendants argue that even if the conduct were highly offensive, it does not amount

24

1   to anyone having "giv[en] publicity" to anything. *Id.* at 14–15. (Defendants' motion does not

2   discuss whether the allegedly publicized material was of legitimate concern to the public.)

3       "[P]ublicity for the purposes of section 652D means communication to the public at large

4   so that the matter is substantially certain to become public knowledge, and that communication

5   to a single person or a small group does not qualify." *Fisher v. State ex rel. Dep't of Health*, 125

6   Wn. App. 869, 879, 106 P.3d 836 (2005) (quoting Restatement (Second) of Torts § 652D

7   cmt. a). Here, Plaintiff alleges that "Defendants' delivery driver . . . photographed the inside of

8   Plaintiff's residence," then "texted the photographs to a group text, thereby disclosing the

9   information to members of the public." Dkt. No. 32 ¶¶ 7.2, 7.3. Defendants assert that "Plaintiff

10  does not allege widespread publication of the picture of his entryway. Rather, to the contrary,

11  Plaintiff alleges that the picture was only shared with an unspecified 'group text.'" Dkt. No. 37 at 15.

12      The Court finds that Plaintiff has insufficiently pleaded a claim of invasion of privacy.

13  Plaintiff does not allege a disclosure sufficiently large to be considered "publicity" under

14  Washington law. Plaintiff asserts that he "does not know how many people were part of the

15  group chat," only that "it was a group." But the size of the group to which the disclosure was

16  made is the crucial factor in determining whether the disclosure constitutes publicity. "A small

17  group does not qualify." *Fisher*, 125 Wn. App. at 879. Here, the size of the group is uncertain.

18  Plaintiff's assertion that an *unknown* number of people received the photographs is not

19  equivalent to a concession that only a *small* number of people received them—the former is a

20  curable defect, while the latter is not—but it is still not sufficient to satisfy the publicity

21  requirement under the law.

22      Because the claim fails as to the breadth of the alleged disclosure, the Court need not

23  analyze whether Plaintiff has adequately alleged the "highly offensive" and "legitimate concern"

24

ORDER ON MOTION TO DISMISS - 11

elements of the claim. Thus, as to Plaintiff's third cause of action, the Court GRANTS Defendants'

motion and DISMISSES the claim for invasion of privacy.

**D.      Fourth Cause of Action: Breach of Contract**

To prevail on a breach of contract claim in Washington, a plaintiff must show that:

(1) the contract imposes a duty; (2) the duty was breached; and (3) the breach proximately

caused damages to the plaintiff. *See Haywood v. Amazon.com, Inc.*, No. C22-1094, 2023 WL

4585362, at *3 (W.D. Wash. July 18, 2023) (quoting *Nw. Indep. Mfrs. v. Dep't of Lab. & Indus.*,

78 Wn. App. 707, 712, 899 P.2d 6 (1995) (quotation marks removed). "Failing to identify a

breached contractual provision dooms a breach of contract claim." *Id.* at *4. Here, Plaintiff does

not identify a contractual provision that Defendants allegedly breached, resulting in a deficient

pleading. *See generally* Dkt. No. 32. Plaintiff admits as much in his response to Defendants'

motion and requests the Court's leave to amend the claim. *See* Dkt. No. 40 at 7–8.

Therefore, as to Plaintiff's fourth cause of action, the Court GRANTS Defendants' motion

and DISMISSES the claim for breach of contract.

**E.      Dismissal Without Prejudice**

"Normally, when a viable case may be pled, a district court should freely grant leave to

amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir.

2011). "[A] party is not entitled to an opportunity to amend his complaint if any potential

amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012).

Further, "the district court's discretion to deny leave to amend is particularly broad where

plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (citation omitted).

Here, although the Court grants Defendants' motion in its entirety, the Court also finds

that Plaintiff's causes of action might be repleaded as viable claims. As to each cause of action,

the Amended Complaint fails to fully establish every element that the respective claims require.

ORDER ON MOTION TO DISMISS - 12

1   But Plaintiff has advised the Court of his willingness to augment his claims with additional facts.

2   *See* Dkt. No. 40 at 5, 6, 7, 8. Therefore, as amendment would not be futile, the Court DISMISSES

3   these claims WITHOUT PREJUDICE and GRANTS Plaintiff leave to amend all claims.

4   **F.      Defendants' Request for Judicial Notice**

5          Generally, a court may not consider material beyond the complaint in ruling on a

6   Rule12(b)(6) motion. *Lee*, 250 F.3d at 688. However, a court may "consider certain materials—

7   documents attached to the complaint, documents incorporated by reference in the complaint, or

8   matters of judicial notice—without converting the motion to dismiss into a motion for summary

9   judgment." *United States v. Ritchie*, 342 F.3d 907–08 (9th Cir. 2003).

10         In a separate submission attached to their Motion to Dismiss, Defendants request that the

11  Court take judicial notice of two documents: (1) "The Amazon.com Conditions of Use ('COUs')

12  publicly available on the Amazon.com website from at least June 1, 2021, through September 13,

13  2022, as they appeared on June 1, 2021"; and (2) "The COUs publicly available on the

14  Amazon.com website from at least June 1, 2022, through September 13, 2022, as they appeared

15  on September 13, 2022." Dkt. No. 37-1 at 2; *see* Dkt. Nos. 37-2, 37-3. Plaintiff does not

16  comment one way or the other on Defendants' request. *See generally* Dkt. No. 40.

17         Although they may be judicially noticeable, the Court declines to take judicial notice of

18  these documents because they are unnecessary to the determination of the present motion and the

19  Court does not rely on them. *See Beagle v. Amazon.com, Inc.*, No. C24-316, 2024 WL 4028290,

20  at *1 n.1 (W.D. Wash. Sept. 3, 2024) (opting not to take judicial notice of certain documents

21  after finding it "unnecessary to [the court's] analysis").

22  //

23  //

24  //

ORDER ON MOTION TO DISMISS - 13

IV.    CONCLUSION

Accordingly, it is hereby ORDERED:

(1)    Defendants' Motion to Dismiss (Dkt. No. 37) is GRANTED. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE, with leave to amend.

(2)    Should Plaintiff opt to file a Second Amended Complaint, he SHALL do so **no later than March 10, 2025.**

Dated this 6th day of February 2025.

Tana Lin
United States District Judge