1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEON COLE,

Plaintiff,

v.

AMAZON.COM SERVICES LLC et al.,

Defendants.

CASE NO. 2:24-cv-01147-TL

ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). Dkt. No. 48. Having reviewed the motion, Plaintiff's response (Dkt. No. 49[1]), Defendants' reply (Dkt. No. 51), and the relevant record, and finding oral argument unnecessary, *see* LCR 7(b)(4), the Court GRANTS the motion.

---

[1] Plaintiff's opposition to Defendants' motion did not include a table of contents or a table of authorities, which are both required for briefs that are 10 pages or longer. *See* Judge Tana Lin, Standing Order for All Civil Cases § II.C (last updated Nov. 1, 2024). Plaintiff is advised to review the Court's Standing Order, available at https://perma.cc/8NEQ-X4S8, and comply with its instructions in future filings.

# I.    BACKGROUND

Plaintiff is Deon Cole, an actor and comedian who describes himself as a "well-known celebrity." Dkt. No. 47 (SAC) ¶¶ 2.1, 4.16. Defendants are Amazon.com Services LLC ("Amazon") and Amazonfresh LLC ("Fresh"), as well as 20 unnamed John Does. *Id.* ¶¶ 2.2–2.4.

On April 20, 2022, Plaintiff placed an order for grocery delivery from Defendant Fresh. *Id.* ¶ 4.1. Later that day, an "Amazon delivery employee"—an employee of Defendant Fresh— arrived at Plaintiff's residence to deliver the groceries. *Id.* ¶¶ 4.2–4.3. When Plaintiff answered the door, the delivery employee advised Plaintiff that he needed to see Plaintiff's identification to complete the delivery. *Id.* ¶ 4.3. Plaintiff went to retrieve his driver's license but left the door to his house "partially open." *Id.* ¶ 4.4. When Plaintiff returned with his license, he found the delivery employee "taking unauthorized photos of the inside of his home from the doorstep." *Id.* ¶ 4.5. Plaintiff asked the delivery employee to stop taking pictures and began to record the delivery employee's actions with his phone. *Id.* ¶¶ 4.6–4.7. Plaintiff also asked the delivery employee to "delete any saved photos from the delivery employee's device." *Id.* ¶ 4.7. The two then "exchanged several words," with the delivery employee initially denying that he had taken any photographs. *Id.* ¶¶ 4.8–4.9. After Plaintiff advised that he had seen a photo on the screen of the delivery employee's electronic device, the delivery employee agreed to delete the photos from the device "and did so in front of [Plaintiff]." *Id.* ¶¶ 4.8–4.9. After the delivery employee left, Plaintiff reviewed the video recording of the incident that he had made on his phone. *Id.* ¶ 4.11. "The recording showed the delivery employee's phone screen and a group chat in which photos of [Plaintiff's] house were shared." *Id.* Plaintiff contacted Defendant Amazon to complain but was dissatisfied with the company's response. *Id.* ¶¶ 4.13–4.15. The incident left Plaintiff "troubled and in constant distress over his safety while in the privacy of his home." *Id.* ¶ 4.15. Plaintiff engaged in "multiple therapy sessions" and installed a new home security system for his

1    residence. *Id.* ¶¶ 4.15, 4.18. Finally, some 18 months afterward, on October 28, 2023, there was

2    an attempted burglary on Plaintiff's home, which the new security system thwarted. *Id.* ¶ 4.19.

3        On March 28, 2024, Plaintiff filed a California state-law complaint against Defendants in

4    Los Angeles County Superior Court, alleging negligence, intentional infliction of emotional

5    distress, and breach of contract. Dkt. No. 1-1. Defendants removed the case to United States

6    District Court for the Central District of California (Dkt. No. 1), then moved to transfer the case

7    to the Western District of Washington pursuant to 28 U.S.C. § 1404(a) and a forum-selection

8    clause in Defendant Amazon's Conditions of Use (Dkt. No. 8). Plaintiff opposed the motion, but

9    on July 26, 2024, the court granted Defendants' motion. Dkt. No. 21. On July 30, 2024, the case

10   was transferred to this Court. Dkt. No. 22.

11       On September 26, 2024, Plaintiff filed an Amended Complaint that pleaded Washington

12   state-law claims. Dkt. No. 32. On November 1, 2024, Defendants moved to dismiss the

13   Amended Complaint. Dkt. No. 37. On February 6, 2025, the Court granted Defendants' motion

14   and dismissed all four of Plaintiff's claims without prejudice, with leave to amend. Dkt. No. 44

15   at 14.

16       On March 10, 2025, Plaintiff filed his SAC, alleging six causes of action under

17   Washington state law: negligence (Dkt. No. 47 ¶¶ 5.1–5.14), negligent training (*id.* ¶¶ 6.1–6.9),

18   negligent supervision (*id.* ¶¶ 7.1–7.8), outrage (*id.* 8.1–8.20), invasion of privacy: public

19   disclosure of private acts (*id.* ¶¶ 9.1–9.18), and breach of contract (*id.* ¶¶ 10.1–10.9). On April 7,

20   2025, Defendants filed the instant motion. Dkt. No. 48.

21                                **II.    LEGAL STANDARD**

22       A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief

23   can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the

24   Court takes all well-pleaded factual allegations as true and considers whether the complaint

1   "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

2   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare

3   recitals of the elements of a cause of action, supported by mere conclusory statements," are

4   insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content

5   that allows the court to draw the reasonable inference that the defendant is liable for the

6   misconduct alleged." *Iqbal*, 556 U.S. at 672. "When reviewing a dismissal pursuant to Rule

7   12(b)(6), "'we accept as true all facts alleged in the complaint and construe them in the

8   light most favorable to plaintiff[ ], the non-moving party.'" *DaVinci Aircraft, Inc. v. United*

9   *States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs.*

10  *Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

### III.   DISCUSSION

12      The SAC pleads six causes of action: negligence, negligent training, negligent

13  supervision, outrage, invasion of privacy, and breach of contract. The Court will discuss each

14  claim in turn.

### A.   First Cause of Action: Negligence

16      In Washington, to establish negligence, a plaintiff must show four elements: "'(1) the

17  existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause.'"

18  *Stanley v. Sierra Pac. Land & Timber*, 567 P.3d 1161, 1168 (Wash. Ct. App. 2025) (quoting

19  *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)). Here Defendants

20  assert that, as pleaded, Plaintiff's negligence claim lacks three of the required elements—duty,

21  breach, and causation. Dkt. No. 48 at 9. Plaintiff asserts that, although the pleaded claim does not

22  expressly allege a "duty," *per se*, duty is "implie[d]" in the SAC. Dkt. No. 49 at 10. As to breach,

23  Plaintiff argues that "[t]he [SAC] does not specifically use the word 'breach,' though it is

24  implied based on the various duties, responsibilities and other actions of which Defendants are

1    accused of not following/complying." *Id.* at 12. And as to causation, Plaintiff asserts that the

2    SAC contains "synonyms of 'cause,'" any of which render that element adequately pleaded. *Id.*

3    at 14. The Court agrees with Defendants and finds that Plaintiff has not adequately pleaded the

4    duty and breach elements of a negligence claim.

5         Plaintiff argues that the SAC's use of "[t]he term 'expressly and implicitly warranted'

6    implies duty." *Id.* at 10. But as Defendants point out, "a duty is not the same as a warranty." Dkt.

7    No. 51 at 5. "'In the law of negligence, a duty of care is defined as an obligation, to which the

8    law will give recognition and effect, to conform to a particular standard of conduct toward

9    another.'" *Om v. Bank of Am., N.A.*, No. C12-496, 2012 WL 12941701, at *5 (W.D. Wash. June

10   15, 2012) (quoting *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449,

11   243 P.3d 521 (2010)). A warranty, in contrast, is a *promise*. *See Fed. Signal Corp. v. Safety*

12   *Factors, Inc.*, 125 Wn.2d 413, 424, 886 P.2d 172 (1994); *see also* "Warrant," *Black's Law*

13   *Dictionary* (12th ed. 2024). Warranties are therefore governed by contract law. *See Cipollone v.*

14   *Liggett Grp., Inc.*, 505 U.S. 504, 525 n.23 (1992) ("Thus it is that express warranty claims are

15   said to sound in contract rather than in tort."). Asserting that Defendants "warranted" something

16   does not adequately allege duty in a negligence claim.

17        Plaintiff argues further that the SAC's suggestion "that Defendants did not do something

18   they should have done" is the equivalent of an allegation of duty. Dkt. No. 49 at 10. The Court

19   need not decide whether this allegation is actually indicative of duty, because even if it is, it still

20   does not rise above a "threadbare recital" of an element of the cause of action. *Iqbal*, 556 U.S. at

21   678 (citing *Twombly*, 550 U.S. at 555). Pleading requires, at the very least, a description of

22   misconduct that does more than merely label the complained-of omission as "something

23   [Defendants] should have done." A court may dismiss a claim that "lacks . . . sufficient facts

24   alleged under a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

1097, 1104 (9th Cir. 2008). Virtually *all* torts represent "something" that a defendant did but should not have done; or something that a defendant failed to do but should have done. The Federal Rules of Civil Procedure require more.

It follows that, because Plaintiff has not adequately alleged a duty, he has also not adequately alleged a breach. The Court need not consider whether Plaintiff has sufficiently alleged causation or injury.

Therefore, as to Plaintiff's claim for negligence, Defendants' motion is GRANTED, and Plaintiff's claim is DISMISSED.

**B.    Second and Third Causes of Action: Negligent Training and Negligent Supervision**

In a claim for negligent training or supervision, "a plaintiff must show the 'employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others.'" *Anthony v. United States*, No. C19-5337, 2020 WL 6392737, at *11 (W.D. Wash. Nov. 2, 2020) (citing *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 363, 423 P.3d 197 (2018)). "[A] plaintiff alleging negligent supervision of an employee [must] show that the employer knew or should have known of the dangerous tendencies of a particular employee." *Anderson*, 191 Wn.2d at 365. An allegation that the employer was aware of a "general danger" that is inherent to the nature of the job does not demonstrate knowledge on behalf of the employer. *See id.* at 366.

Plaintiff has not pleaded sufficient facts that indicate that Defendants knew, or should have known, that the delivery employee here posed a risk to others. Rather, Plaintiff attempts to satisfy this element by alleging that, "*Based on the acts alleged* . . . , Defendants knew, or should have known, that their failure to supervise the delivery employ [*sic*] would, and did, cause [Plaintiff] severe emotional distress." Dkt. No. ¶ 7.5 (emphasis added). This is a logical fallacy: By itself, an employee's conduct on Friday is not indicative of what the employer must have

known, or should have known, on Thursday. Certainly, an employee's conduct on *Wednesday* might give rise to such knowledge (or a reasonable expectation of such knowledge), but Plaintiff has not alleged any historical information that Defendants must have known, or should have known, *prior* to alleged occurrence of the complained-of conduct. As Defendants assert, Plaintiff "alleges no facts *at all* about the delivery driver before the delivery on April 20, 2022 . . . ." Dkt. No. 48 at 10. He has therefore not satisfied the knowledge requirement of a negligent training or negligent supervision claim.

Further, Plaintiff's argument that "Employers have a duty to prevent their employees from harming foreseeable victims" is an oversimplistic and incomplete representation of the law. *See* Dkt. No. 49 at 15–16. Plaintiff's premise is certainly true where an employee is acting within the scope of their employment, and an employer can be held liable for its employee's misconduct under the doctrine of respondeat superior. But, as Plaintiff has pleaded, that is not the case here. *See* Dkt. No. 47 ¶¶ 5.5–5.6, 8.3 (alleging that the delivery employee "was outside the scope of his employment both when he took the photographs and when he disseminated them to his group text").

As explained by the Washington Supreme Court, the "foreseeable victim" doctrine holds that "where an employee is acting outside the scope of employment, the relationship between employer and employee gives rise to a limited duty, *owed by an employer to foreseeable victims*, to prevent the tasks, premises, or instrumentalities entrusted to an employee from endangering others." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997) (emphasis added). The doctrine only applies where "a special relationship exists between the defendant and either the third party o[r] the foreseeable victim of the third party's conduct." *Boy 1 v. Boy Scouts of Am.*, 832 F. Supp. 2d 1282, 1286 (W.D. Wash. 2011). "In all cases, the duty to protect another

1    person from the intentional or criminal actions of third parties generally arises where one party is

2    'entrusted with the well being of another.'" *Id.* at 1287 & n.1 (quoting *Niece*, 131 Wn.2d at 50).

3         The question, then, is whether Defendants Amazon and Fresh were entrusted with

4    Plaintiff's well being. And the answer, quite simply, is no. The Washington Supreme Court has

5    recognized that "a special relationship exists between a business and an invitee because the

6    invitee enters the business premises for the economic benefit of the business." *Nivens v. 7-11*

7    *Hoagy's Corner*, 133 Wn.2d 192, 202, 943 P.2d 286 (1997). But this standard is inapplicable

8    here, because the alleged injury did not occur on the business's "premises." *Scott v.*

9    *Amazon.com, Inc.*, 33 Wn. App. 2d 44, 65 n.15, 559 P.3d 528 (Ct. App. 2024) (holding that there

10   was no "special relationship" between business and customer where transaction was effected by

11   home delivery and customer never entered any physical premises owned by business).[2]

12        Therefore, as to Plaintiff's claims for negligent training and negligent supervision,

13   Defendants' motion is GRANTED, and Plaintiff's claims are DISMISSED.

**C.    Fourth Cause of Action: Outrage**

15        "In Washington State, intentional infliction of emotional distress constitutes the same tort

16   as outrage." *Maddox v. United Network for Organ Sharing*, 773 F. Supp. 3d 1109, 1123 (W.D.

17   Wash. 2025) (citing *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003)). There are

18   three elements to a claim of outrage: "(1) extreme and outrageous conduct; (2) intentional or

19   reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional

20   distress." *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 242, 35 P.3d 1158 (2001).

21   "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury."

---

[2] On April 2, 2025, the Washington Supreme Court granted review of *Scott v. Amazon.com, Inc.* 4 Wn.3d 1015, 566 P.3d 90 (2025). The issues presented for review, however, are separate and distinct from the proposition that the Court has cited in this Order. *See* Petition for Review, *Scott v. Amazon.com, Inc.*, No. 103730-9, 2024 WL 6068128, at *4.

*Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989). On a motion to dismiss, "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* (citing *Phillips v. Hardwick*, 29 Wn. App. 382, 387, 628 P.2d 506 (1981)).

### 1.     Extreme and Outrageous Conduct

Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Maddox*, 773 F. Supp. 3d at 1123 (citing *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 779, 336 P.3d 1142 (2014)). In dismissing the outrage claim in Plaintiff's FAC, the Court acknowledged that the alleged acts by the delivery employee "may be unwelcome, upsetting, and offensive" but held that "merely snapping photographs of an individual's home—even its interior—without permission is simply not, as pleaded, beyond all possible bounds of decency." Dkt. No. 44 at 10. As Defendants point out, the outrage claim in the SAC is "base[d] . . . on the exact same conduct that Plaintiff alleged in the Amended Complaint: The delivery driver took pictures of the inside of Plaintiff's residence without his permission." Dkt. No. 48 at 12.

As a preliminary matter, Plaintiff raises on several occasions the fact that he is a celebrity. "[A] celebrity," he argues, "is a target for criminals." Dkt. No. 49 at 17. He continues, "any reasonable person in Plaintiff's position would find [the complained-of conduct] highly offensive and intolerable[, . . . and] any reasonable celebrity would be highly offended." *Id.* But the standard for outrageous conduct is whether "the recitation of the facts to *an average member of the community* would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Kloepfel*, 149 Wn.2d at 196 (quoting *Reid v. Pierce County*, 136 Wn.2d 195, 201–02, 961 P.2d 333 (1998)) (emphasis added). Plaintiff's status as a celebrity is irrelevant.

1    Plaintiff has augmented the outrage claim in the SAC by adding allegations that allege

2    how "[a]ny reasonable homeowner would have" felt about the alleged misconduct (Dkt. No. 47

3    ¶¶ 8.6–8.10) and allegations as to how "[a]ny reasonable person would have found" the alleged

4    misconduct (*id.* ¶¶ 8.11–8.15). The SAC also includes a new allegation asserting that "It is

5    extreme, atrocious, beyond all possible bounds of decency, and utterly intolerable in a civilized

6    community to take pictures of the inside of someone's home without their permission," and that

7    "[Plaintiff's] home was not up for sale and the driver was not a real estate agent. There was no

8    legitimate purpose for the taking of the photographs." *Id.* ¶ 8.5. But with one exception—the

9    facts that Plaintiff's home was not on the market, and that the delivery employee was not a real

10   estate agent—the additions to the claim represent legal conclusions, opinion, and commentary,

11   but not facts. *See Thompson v. Mukilteo Sch. Dist. No. 6*, No. C25-529, 2025 WL 1736342, at *8

12   (W.D. Wash. June 23, 2025) ("[Plaintiff's] allegations that the District's conduct 'was extreme

13   and outrageous' constitute legal conclusions rather than factual allegations and are insufficient

14   under federal pleading standards."). Consequently, they do not contribute to the sufficiency of

15   the complaint. *See Iqbal*, 556 U.S. at 678 ("[Courts] are not bound to accept as true a legal

16   conclusion couched as factual allegation.").

17   Without these allegations, the outrage claim in the SAC is virtually identical to the

18   outrage claim in the FAC, and the Court is again faced with a claim that covers nothing more

19   than "merely snapping photographs of an individual's home—even its interior—without

20   permission." Dkt. No. 44 at 10. "[I]t is not enough that a defendant has acted with an intent

21   which is tortious or even criminal or that he has intended to inflict emotional distress, or even

22   that his conduct has been characterized by malice, or a degree of aggravation which would entitle

23   the plaintiff to punitive damages for another tort." *Birklid v. Boeing Co.*, 127 Wn.2d 853, 868,

24   904 P.2d 278 (1995) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)). As

discussed in its previous Order, in *Womack v. Von Rardon*, the Washington Court of Appeals

affirmed the trial court's dismissal of an outrage claim where defendants had allegedly taken

plaintiff's cat from her "front porch and[,] using gasoline[,] set him on fire. [The cat] suffered

first, second, and third degree burns [and] was soon euthanized." Dkt. No. 44 at 9 (quoting 133

Wn. App. 254, 257, 135 P.3d 542 (2006)). In *Mancini v. City of Tacoma*, the Washington Court

of Appeals affirmed the trial court's dismissal of an outrage claim, even while *reversing*

dismissal of an invasion-of-privacy claim. 188 Wn. App. 1006, 2015 WL 3562229 (June 8,

2015). The case is especially illustrative of the high bar that a plaintiff must clear to successfully

establish a claim of outrage in Washington, particularly where the complained-of conduct

concerns invasion of privacy, so the Court quotes from the opinion at length:

> On January 5, 2011, at approximately 9:30 a.m., Mancini was
> roused from her sleep when the door to her Federal Way apartment
> was blown off its hinges with a battering ram. Mancini, who was
> 63 years old at the time, worked as a nurse at Group Health
> Hospital. She worked the graveyard shift and had been asleep in
> her bed after finishing her shift the previous night. Wearing only a
> nightgown, she emerged from her bedroom to find numerous
> Tacoma City Police officers dressed in SWAT gear in her hallway
> with their weapons drawn. The officers shouted "Get down! Get
> down!" and pushed Mancini, who stands approximately five feet
> tall, face down onto the floor. They then placed her in handcuffs
> with her hands behind her back and forcibly led her to the entrance
> of her apartment.
>
> Although the officers "immediately observed that the inside of the
> apartment was not as the confidential and reliable informant had
> described," they still searched Mancini's apartment while she
> stood outside in handcuffs, wearing only a nightgown, for
> approximately 30 minutes. They removed clothing from hangers in
> a closet; they moved a bed in her guestroom; they disturbed a
> number of religious icons belonging to her deceased mother, which
> were on a bedside table; they rifled through kitchen cabinets; and
> they searched her fireplace. While her apartment was being
> searched, officers who remained with Mancini repeatedly shoved a
> picture of a man in her face, shouting, "Where is he? Where is
> he?" Mancini did not recognize the man in the picture.

*Id.* at *1 (footnote omitted). The police had raided the wrong residence and, despite realizing as much almost immediately, still completed the operation as planned. The court found that Mancini had been "needlessly subjected to both mental and physical distress," but that a reasonable trier of fact could not consider the affair to have been outrageous. *Id.* at *13. Notably, however, a reasonable trier of fact could conclude that police had "intentionally intruded upon Mancini's seclusion," and the court reversed the trial court's dismissal of that claim. *Id.* at *12.

Here, while objectionable, the complained-of conduct was insufficiently egregious to sustain a claim of outrage. Plaintiff has not provided any argument or authority to suggest that the Court should reach a different conclusion now than it reached six months ago.

### 2.    Intentional or Reckless Infliction of Emotional Distress

The claim is further deficient because, like the outrage claim in the FAC, the outrage claim in the SAC does not allege that Defendants acted with any intent to injure Plaintiff or cause severe emotional distress. "Unlike causes of action based on negligence, a plaintiff claiming intentional or reckless infliction of emotional distress must show extreme and outrageous conduct intended to cause emotional distress to the plaintiff." *Kloepfel*, 149 Wn.2d at 201–02. Once again, *Womack* is instructive here. Even where defendants in that case did horrific things to plaintiffs' cat, the claim was dismissed because the plaintiffs did not demonstrate that the defendants intended to injure *them*. Although "[w]hat happened to [the cat] was deplorable," plaintiffs had failed to show defendants' intent to inflict severe emotional distress. *Id.* at 261. Similarly here, Plaintiff has not pleaded adequate facts to demonstrate Defendants' intent to injure him.

*        *        *

Because Plaintiff's claim is deficient with respect to the first two elements of outrage, the Court need not consider whether Plaintiff has adequately pleaded severe emotional distress.

Plaintiff has not alleged extreme and outrageous conduct or intent to inflict emotional distress.

Therefore, as to Plaintiff's claim for outrage, Defendants' motion is GRANTED, and the claim is

DISMISSED.

**D.    Fifth Cause of Action: Invasion of Privacy**

In Washington, courts follow the "general rule for invasion of privacy," as provided in

Section 652D of the Restatement (Second) of Torts:

> One who gives publicity to a matter concerning the private life of
> another is subject to liability to the other for invasion of privacy, if
> the matter publicized is of a kind that: (a) would be highly
> offensive to a reasonable person, and (b) is not of legitimate
> concern to the public.

*Reid v. Pierce County*, 136 Wn.2d 195, 205, 961 P.2d 333 (1998) (quoting Restatement (Second)

of Torts ("Restatement") § 652D (1977)). Defendants assert that Plaintiff's claim fails for two

reasons: First, Defendants argue that Plaintiff has not "allege[d] any conduct 'highly offensive to

a reasonable person.'" Dkt. No. 48 at 10. Second, Defendants argue that no "private information

was published." *Id.*

Plaintiff's claim fails on the first ground. Irrespective of whether Defendants "publicized"

the matter—a question the Court need not reach here—the subject matter of the allegedly

offending photographs was not "highly offensive to a reasonable person." Defendants argue that

the photograph (or photographs) at issue in this case are "categorically not the type of intimate

information about one's life that the tort protects." *Id.* at 15. Citing comment b from the

applicable section of the Restatement, Defendants assert that the tort is only concerned with

sensitive subject matter such as "sexual relations, family quarrels, and disgraceful or humiliating

illnesses." *Id.* (quoting Restatement § 652D, cmt. b) (alterations omitted). Plaintiff does not

refute Defendants' categorical argument and asserts merely that "the inside of a residence" is an

*unreasonable* subject for photography. Dkt. No. 49 at 19. Further, Plaintiff focuses on the facts

1    that Plaintiff did not consent to the photography—i.e., the photographs were "unauthorized" (*id.*

2    at 19)—and that Plaintiff is a celebrity (*id.* at 20). These latter facts are immaterial.[3]

3            In determining what is "highly offensive to a reasonable person," the Washington

4    Supreme Court has focused on whether the subject matter at issue represents "matters concerning

5    the private life." *Bellevue John Does 1–11 v. Bellevue Sch. Dist. #405*, 164 Wn.2d 199, 212, 189

6    P.3d 139 (2008); *see Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 135–36, 580 P.2d 246 (1978)

7    (adopting definition of "invasion of privacy" from Restatement § 652D). In framing the inquiry,

8    the *Bellevue John Does* court quoted at length from comment b to Restatement § 652D, distilling

9    the issue into a question of whether the subject matter at issue is one of those "'phases of [one's]

10   life and his activities and some facts about himself that he does not expose to the public eye, but

11   keeps entirely to himself or at most reveals only to his family or to close personal friends.'"

12   *Bellevue John Does*, 164 Wn.2d at 212–13 (quoting Restatement § 652D, cmt. b). Of particular

13   relevance here, the court recognized "'most details of a man's life in his home'" as falling within

14   the purview of the tort. *Id.* at 213 (quoting Restatement § 652D, cmt. b).

15           Here, although the Court is sympathetic to Plaintiff's position, the law accords more

16   closely with Defendants' argument. First, the Restatement's use of the word "entirely" places the

17   portion of the interior of Plaintiff's house that is visible from the front doorstep—and perceived

18   through an open door—beyond the realm of "highly offensive." Plaintiff opened his front door to

19   the delivery employee, then left it "partially open as he went to retrieve his driver's license."

20   Dkt. No. 47 ¶¶ 4.3, 4.4. The SAC does not allege that the delivery employee entered Plaintiff's

21   home without permission; rather, the delivery employee took the allegedly offending

22   photographs "from the doorstep." *Id.* ¶ 4.5. In permitting the delivery employee to see into the

23
24   [3] Plaintiff asserts, "As a celebrity, [Plaintiff's] privacy is important." Dkt. No. 49 at 6. Privacy is a constitutional right in Washington. Wash. Const. art. I, § 7.

residence through the "partially open" door, Plaintiff conceded that, whatever might be viewable from the delivery person's vantage was not something that Plaintiff kept "entirely to himself." Had Plaintiff wanted to keep the delivery employee from seeing the interior of his home, he might have encountered the employee in such a way as to completely preclude him from seeing inside. For example, he might have simply closed the door completely, or far enough to block any view into the home, while he went to get his identification. Consider a resident who answers the door and greets a visitor without first donning shoes and socks. They have no viable gripe that the visitor saw their bare feet. And afterward, they cannot plausibly argue that the condition of their feet is something that they keep *entirely* to themself.

This conclusion is supported by additional language in the comment, which limits the tort's coverage to "*most* details of a man's life in his home." *Bellevue John Does*, 164 Wn.2d at 213 (quoting Restatement § 652D, cmt. b) (emphasis added). "'Most' is not 'all.'" *Dixon v. Colvin*, No. C13-5009, 2014 WL 801250, at *5 (W.D. Wash. Feb. 28, 2014). A house comprises multiple rooms and interior spaces, not all of which are viewable from the front doorstep. It is not unreasonable to presume that, if an individual intended to keep something *entirely* to themself (or to a circle that included only their family and close personal friends), they would not make it visible from the front doorstep, where anyone presented with an open—or partially open—door could see it. The delivery employee was neither family nor close friend, yet Plaintiff allowed them to see into his house anyway. This cuts against any claim he might have that what the employee saw was, under Washington law, truly a matter concerning Plaintiff's private life. It was, therefore, not "highly offensive," and not protected by the tort. *See Bellevue John Does*, 164 Wn.2d at 212.

1    Plaintiff has not alleged the publicization of "highly offensive" material. Therefore, as to

2    Plaintiff's claim for invasion of privacy, Defendants' motion is GRANTED, and the claim is

3    DISMISSED.

4    **E.     Sixth Cause of Action: Breach of Contract**

5    "A breach of contract claim must point to a provision of the contract that was breached."

6    *BP West Coast Prods., LLC v. Shalabi*, No. C11-1341, 2012 WL 441155, at *4 (W.D. Wash.

7    Feb. 10, 2012) (citing *Elliot Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 98 P.3d 491

8    (2004)). A plaintiff's failure to identify the allegedly breached contractual provisions is "fatal" to

9    a breach-of-contract claim. *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 58 F. Supp. 3d

10   1166, 1171 (W.D. Wash. 2014).

11   Here, Plaintiff alleges that "Defendants breached their contract with Plaintiff by failing to

12   provide him with a safe and trusted shopping experience during the April, 20, 2022, delivery to

13   Plaintiff's residence." Dkt. No. 47 ¶ 10.6. But although Plaintiff attaches Amazon's Conditions

14   of Use to the SAC (*see* Dkt. No. 47 at 15–18), the only language from Amazon that Plaintiff

15   actually cites in the SAC is a statement from the company's webpage: "Amazon is committed to

16   providing a safe and trusted shopping experience" (*id.* ¶ 10.3). This statement does not appear in

17   the Conditions of Use, and Plaintiff does not demonstrate why the Court should deem it part of

18   the contract between Plaintiff and Amazon. *See id.* at 15–18; *see also Corner Computing Sols. v.*

19   *Google LLC*, 750 F. Supp. 3d 1208, 1216 (W.D. Wash. 2024) (finding that language published

20   on a company's policies webpage is "separate and distinct from the Terms of Service" and is not

21   "necessarily incorporated into" that contract); *Double D Trade Co., LLC v. Lamex Foods, Inc.*,

22   No. C09-919, 2009 WL 4922899, at *5 (W.D. Wash. Dec. 14, 2009) ("For a document to

23   become part of a contract under the incorporation by reference doctrine [under Washington law],

24   the contract must explicitly incorporate the other document.").

1    In his briefing, Plaintiff insists that the "safe and trusted shopping experience" language

2    is contractual in and of itself. Dkt. No. 49 at 20. Plaintiff provides no authority to support this

3    assertion, though, and beyond the fact that it does not appear in the Conditions of Use, the Court

4    shares Defendants' skepticism as to whether this language could be legally binding. *See* Dkt.

5    No. 51 at 10 n.3. The statement, after all, is not a promise. "A promise is, in part, a

6    'manifestation of intention to act or refrain from acting in a specified way . . . .'" *McCormick v.*

7    *Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 117, 992 P.2d 511 (1999) (quoting Restatement

8    (Second) of Contracts § 2 (1981)). Defendant Amazon does not explain how, *specifically*, it will

9    act, or refrain from acting, to provide a "safe and trusted shopping experience"; it merely evinces

10    a vague commitment to doing so. Further, "[a] promise has also been defined as 'an undertaking,

11    however expressed, either that something shall happen, or that something shall not happen, in the

12    future.'" *Hansen v. Virginia Mason Med. Ctr.*, 113 Wn. App. 199, 207, 53 P.3d 60 (2002)

13    (quoting *Plumbing Shop, Inc. v. Pitts*, 67 Wn.2d 514, 517, 408 P.2d 382 (1965)). The

14    purportedly contractual provision at issue here does not express anything that shall or shall not

15    happen in the future.

16    Plaintiff has not identified a contractual provision that Defendants have allegedly

17    breached. Therefore, as to Plaintiff's claim for breach of contract, Defendants' motion is

18    GRANTED, and the claim is DISMISSED.

19    **F.    Dismissal With Prejudice**

20    "Normally, when a viable case may be pled, a district court should freely grant leave to

21    amend." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir.

22    2011). "[A] party is not entitled to an opportunity to amend his complaint if any potential

23    amendment would be futile." *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012).

24

Further, "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Cafasso*, 637 F.3d at 1058 (citation omitted).

### 1. Negligence, Negligent Training, and Negligent Supervision

As to Plaintiff's three negligence claims, Plaintiff's claim for general negligence is new; it was not pleaded in the FAC. The claims for negligent training and negligent supervision are not new. But when the Court dismissed Plaintiff's FAC claims for negligent training and negligent supervision, it did so on the basis that Plaintiff had failed to allege that the delivery employee had acted outside of the scope of his employment, which is a necessary element of the claims. Dkt. No. 44 at 4.[4] Here, the Court again dismisses these two causes of action, but for a different reason—namely, Plaintiff has not pleaded sufficient facts to establish that Defendants Amazon and Fresh knew, or should have known, that the delivery employee posed a risk to the public. The Court acknowledges that in its prior order, it advised Plaintiff of this specific deficiency—but that was in the context of a claim of negligent retention. *See id.* at 5. The Court did *not* specifically advise Plaintiff that his claims for negligent training and negligent supervision were equally deficient in this regard. Therefore, although Plaintiff has already amended his complaint, and although his pleading of these clams is still deficient, he has not demonstrated that further amendment of his negligence claims would be futile.

---

[4] In re-pleading this claims in the SAC, Plaintiff has partially rectified this problem. Plaintiff now alleges that the delivery employee "began to act outside of the scope of employment when he began filming and/or photographing the interior of [Plaintiff's] home . . . ." Dkt. No. 47 ¶ 5.5; *accord id.* ¶¶ 5.6, 8.3. But Plaintiff also alleges that the delivery employee "was, in doing the business of things herein complained of, acting within the course and scope of [his employer–employee] relationship" with Defendants Amazon and Fresh. Dkt. No. 47 ¶ 2.5. The Ninth Circuit has held that "the liberal pleading policy has its limits. '[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.'" *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (quoting *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)). *But see Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129, 1135 (C.D. Cal. 2022) (granting leave to amend "to resolve internal inconsistencies within the pleaded facts"). Should Plaintiff file a third amended complaint, he should assert contradictory facts only where there is legitimate doubt as to their veracity.

1    Therefore, the Court dismisses these claims without prejudice and grants Plaintiff leave

2    to amend. Plaintiff shall have one final opportunity to viably plead these causes of action. Should

3    Plaintiff deficiently plead these claims again, however, they will be dismissed with prejudice.

4    **2.    Outrage, Breach of Contract, and Invasion of Privacy**

5    As to Plaintiff's claims for outrage and breach of contract, the Court has now twice

6    dismissed these claims under the same rationale. In its prior order, the Court advised Plaintiff

7    that his outrage claim was deficient, in part, because it did not allege facts indicating that the

8    complained-of conduct "was done with an eye toward injuring Plaintiff." Dkt. No. 44 at 9. That

9    deficiency persists, *see supra* Section III.C.2, and the Court again dismisses the claim on that

10    basis. The Court also advised Plaintiff in its prior order that his breach-of-contract claim was

11    deficient, because "Plaintiff d[id] not identify a contractual provision that Defendants allegedly

12    breached . . . ." Dkt. No. 44 at 12. That deficiency also persists. *See supra* Section III.E. Plaintiff

13    has thus "'already been given two bites at the apple'; he amended his Complaint following the

14    Court's prior order, which identified many of the deficiencies at issue here." *Eisner v. Meta*

15    *Platforms, Inc.*, No. C24-2175, 2024 WL 4545968, at *4 (N.D. Cal. Oct. 22, 2024) (quoting

16    *Wochos v. Tesla, Inc.*, No. C17-5828, 2019 WL 1332395, at *7 (N.D. Cal. Mar. 15, 2019)).

17    Plaintiff's "failure to remedy those deficiencies suggests that he has already 'made his best case'

18    and that leave to amend would be futile." *Id.* (citing *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 542 (9th

19    Cir. 2024)).

20    As to Plaintiff's claim for invasion of privacy, the Court finds that amendment would be

21    futile because, as discussed above, the complained-of conduct is categorically excluded from the

22    purview of the tort under Washington law. *See supra* Section III.D. Plaintiff could not add any

23    facts to his allegations that would render the subject matter of the photographs "highly

24    offensive." Thus, this cause of action cannot be salvaged.

Therefore, the Court dismisses these claims with prejudice.

## IV.    CONCLUSION

Accordingly, Defendants' motion to dismiss (Dkt. No. 48) is GRANTED. It is hereby ORDERED:

(1)    Plaintiff's claims for negligence, negligent training, and negligent supervision are DISMISSED WITHOUT PREJUDICE.

(2)    Plaintiff's claims for outrage, breach of contract, and invasion of privacy are DISMISSED WITH PREJUDICE.

(3)    If Plaintiff intends to file a Third Amended Complaint ("TAC"), he SHALL do so **no later than September 15, 2025.** Plaintiff's TAC SHALL NOT include those claims which have been dismissed with prejudice.

Dated this 14th day of August 2025.

Tana Lin
United States District Judge